IN THE UNITED STATES COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| CASEY HUBBLE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION NO. 6:22-cv-1087 |
| v. | ) | |
| | ) | |
| JOHNETTE McKOWN, Individually, | ) | COMPLAINT |
| AND | ) | |
| McLENNAN COMMUNITY COLLEGE | ) | |
| | ) | JURY DEMAND |
| Defendant. | ) | |

## ORIGINAL COMPLAINT

TO THE HONORABLE JUDGE OF THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF TEXAS, WACO DIVISION:

NOW COMES Plaintiff Casey Hubble, and sues Johnette McKown, Individually, and McLennan Community College ("MCC") for their deprivation of Plaintiff's rights under the First and Fourteenth Amendments to the United States Constitution, and would show the Court as follows:

### NATURE OF THE CASE

This is an action under 42 U.S.C §1983 ("§1983"), to correct violations of constitutional rights and to provide appropriate relief to Casey Hubble, who was adversely affected by such practices. As alleged with greater particularity below, Hubble alleges that Defendants violated his First and Fourteenth Amendment rights.

### JURY DEMAND

This action seeks money damages because of a state funded community college's and its president's violations of Plaintiff's First Amendment right to freedom of speech and the wrongful deprivation of Plaintiff's property rights by violation of his procedural and substantive Fourteenth

Amendment right to due process.  Defendants acted under color of state law.  Plaintiff demands trial by jury.

## JURISDICTION AND VENUE

1.      This is a civil rights suit brought under the First and Fourteenth Amendments to the United States Constitution and the Civil Rights Act of 1871, Rev. Stat. §1979, as amended, 42 U.S.C. §1983.

2.      The Plaintiff seeks declaratory relief, compensatory and punitive damages, and reinstatement.  This Court has jurisdiction under 28 U.S.C §1391.

## THE PARTIES

3.      Plaintiff Casey Hubble is a citizen of the United States and a resident of McLennan County, Texas.  His constitutional rights to free speech and to due process were violated when Defendants revoked his tenure and terminated his employment as a professor at MCC.

4.      Defendant Johnette McKown is President of McLennan Community College in Waco, Texas.

5.      Defendant McLennan Community College is a state funded community college in Waco, Texas.

## FACTUAL ALLEGATIONS

Background

6.      Hubble is a military veteran.  He served 10 years in the United States Army, airborne infantry.  During his service he developed certain disabilities, including osteoarthritis in his knees, chronic asthma, scarring of his bronchial tubes, migraines, post traumatic stress disorder, malocclusion of his jaw, and photophobia (a sensitivity to bright light).  Those service related disabilities continue to this day.

2

7.     Hubble was employed by MCC as a professor in the Government Department in 2006.  In 2010-2011, he became tenured.

<u>Hubble's Complaints</u>

8.     Over the course of his employment, Hubble filed various charges of discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Texas Workforce Commission ("TWC"), among others, based upon his disabilities.  He filed his earliest such EEOC complaint in 2019.

9.     More recently, Hubble filed a complaint with the Southern Association of Colleges and Schools Commission on Colleges ("SACS"), the accreditation agency for MCC.  As a result of that complaint, MCC was denied reaffirmation and placed on "public sanctions warning" status because MCC failed to correct deficiencies and failed to comply with SACS policies and procedures.  The specific policies were Core Requirement 6.1 (Full-time faculty), Standard 5.4 (Qualified administrative/academic officers), and Standard 6.2b (Program faculty).  *See* Exhibit 1 hereto, a true and correct copy of the June 25, 2022, report from SACS to MCC.  Hubble's complaint to SACS was that MCC had too few full-time professors and that as a result, some professors were teaching 40-45 hours a semester, referred to as "faculty overloads."  MCC had been warned about that practice, but failed to correct it.  That failure resulted in MCC being placed on "public sanctions warning" by SACS.  *Id.*

10.     Defendant McKown was fully aware of Hubble's complaints to SACS and the resulting sanctions.  Those complaints furnished McKown's motivation to revoke Hubble's tenure and to terminate him.

The January 25, 2022, Incident

11.     On January 25, 2022, Hubble was on the campus of MCC in order to teach a class. At about 12:45 p.m., Hubble entered the parking lot and headed toward a handicapped parking space.  He encountered an MCC police officer parked in such a way that he could not easily get around the patrol car.  Hubble asked the officer to move the patrol car so that he could drive to the handicapped parking space.  Hubble noticed that the car that the officer had approached was a silver Mustang.   The Mustang had preceded Hubble through the campus intersection at Highlander/Powell.  Hubble told the officer that he saw the Mustang stop at the stop sign.  Hubble told the driver that he could be a witness if needed.  The officer then moved the patrol car far enough for Hubble to drive by it and go park.

12.     The entire incident was over in less than thirty (30) seconds.  Hubble never got closer than fifteen (15) feet from the officer.  Hubble did not threaten the officer either verbally or physically.

13.     Approximately a week later, MCC police, who are employees of MCC, arrested Hubble in a campus stairwell while leaving the campus.  He was handcuffed in a manner that caused him extreme pain.  Hubble was transported to the McClennan County jail.  Hubble was unable to straighten his legs resulting in excruciating pain in his arthritic knees.  Hubble informed the officers of the pain, but the officers did nothing to help.

14.     Hubble was placed in a tiny holding cell for seven or eight hours before being moved to general population with 30-35 inmates, most of whom were charged with felony offenses.  Hubble remained in jail until 6:00 p.m. or 6:30 p.m. the next day.  During that time, he was denied the use of his cane needed for walking and denied his medication.  While incarcerated

an inmate threw bodily fluids on him.   Having never been previously arrested, Hubble was traumatized by the experience and remains traumatized to this day.

15.     Hubble was arrested for allegedly violating §38.15(a) of the Texas Penal Code, entitled "Interference with Public Duties."   Per §38.15, it is an offense if a "person with criminal negligence interrupts, disrupts, impedes, or otherwise interferes with: (1) a peace officer while the peace officer is performing a duty or exercising authority imposed or granted by law..."   Section 38.15(d) provides that "It is a defense to prosecution…that the interruption, disruption, impediment or interference alleged consisted of speech only."

Hubble's First Termination

16.     Upon Hubble's release from the McLennan County jail, he was given a letter dated February 1, 2022, from MCC President Johnette McKown informing Hubble that his tenure was revoked and his employment was terminated "[p]ursuant to the Policies and Procedures Manual and specifically the Academic Freedom Responsibility and Tenure Policy (Kf-111-a), and subsequent to your arrest on February 1, 2022."   *See* Exhibit 2 hereto, a true and correct copy of the February 1, 2022, letter from McKown.

17.     The termination was quickly rescinded for failure to provide the due process protections provided for in MCC's Policies and Procedures Manual and required by the United States Constitution.   Hubble was placed on paid suspension, and barred from the MCC campus and from any contact with students and staff.

Hubble's Criminal Prosecution

18.     The McLennan County Criminal District Attorney's Office initially refused the case against Hubble, stating that the MCC Police Department "obviously failed to read" the portion of the statute that says a violation consisting of speech only "is not an offense."   *See* Exhibit 3

hereto, a true and correct copy of the case disposition report.  However, the MCC Chief of Police contacted the District Attorney's Office and persuaded the assistant D.A. to reinstate the charges. A Motion to Dismiss was later filed by Assistant District Attorney Randy Stevens based on the "speech only" defense.[1]  *See* Exhibit 4 hereto, a true and correct copy of the Motion to Dismiss.

19.    The Motion to Dismiss states that the reason the dismissal is sought is that, "Successful prosecution unlikely under *Houston v. Hill*, 482 U.S. 451 (1987)."  *See* Exhibit 4. That United States Supreme Court case involved a municipal ordinance in Houston that was very similar to Texas Penal Code §38.15(a)[2]:

> Sec. 34-11.  Assaulting or interfering with policemen.
>
> (a)      It shall be unlawful for any person to assault, strike or in any manner oppose, molest, abuse or interrupt any policeman in the execution of his duty…

*Houston v. Hill*, 482 U.S. 451, 455, 107 S.Ct. 2502, 2506 (1987).

20.    The underlying facts in *Houston v. Hill* show that the arrest made was based on speech only, with the arrestee shouting at the officers in an effort to divert their attention from an individual the arrestee thought the officers were going to hit.  482 U.S. at 453 n. 1, 107 S.Ct. at 2505 n.1.  The arrestee was acquitted, after which he filed suit seeking a declaratory judgment that the ordinance was unconstitutional.  The trial court denied relief, but the Fifth Circuit Court of Appeals panel disagreed.  Rehearing *en banc* was granted and the panel's decision was upheld.

21.    The Supreme Court held that the ordinance unconstitutionally punished "only spoken words."  *Id.* 482 U.S. at 461, 107 S.Ct. at 2509:

> The Constitution does not allow such speech to be made a crime. The freedom of individuals verbally to oppose or challenge police

---

[1] The Motion to Dismiss was granted on September 1, 2022.  There are no pending criminal charges against Hubble. *See* Exhibit 4.
[2] Texas Penal Code §38.15 (including the "speech only" defense), was adopted by the Texas Legislature subsequent to *Houston v. Hill*.

> action without thereby risking arrest is one of the principal
> characteristics by which we distinguish a free nation from a police
> state.

*Id.* 482 U.S. at 462-63, 107 S.Ct. at 2510:

> Although we appreciate the difficulties of drafting precise laws, we
> have repeatedly invalidated laws that provide the police with
> unfettered discretion to arrest individuals for words or conduct that
> annoy or offend them.[3]

*Id.* 482 U.S. at 465, 107 S.Ct. at 2511.

22.     Unlike the Houston ordinance at issue in the *Houston v. Hill* case, Texas Penal Code §38.15(a) provides a defense if the interference consists of speech only. *See* Texas Penal Code §38.15(d). The McClennan County District Attorney's office decided Hubble engaged in speech only on January 25, 2022. *See* Exhibits 3 and 4. However, the MCC faculty appeal Hearing Committee used that same speech to justify revocation of Hubble's tenure and termination of his employment. That action violated Hubble's First Amendment right to freedom of speech.

23.     Hubble participated in each of the available MCC procedures to challenge his revocation of tenure and termination of employment. The first was a personal conference with Defendant McKown on March 17, 2022. The second was the Advisory Committee hearing on May 5, 2022. The Advisory Committee recommended a faculty appeal hearing before the Hearing Committee. The Hearing Committee hearing was held on June 29-30, 2022, before five tenured professors.

24.     Throughout the due process procedures, Hubble was repeatedly assured that the grounds for revocation of his tenure and his termination were limited to his failure to "adhere to the Code of Professional Ethics as adopted by the Texas Community College Teachers

---

[3] The contemporary report written by the MCC police officer described Hubble's conduct on January 25, 2022, as unprofessional and disrespectful. By the time of the Hearing Committee hearing months later, Hubble's conduct was described as "aggressive."

Association."   The only stated reason for the revocation of tenure and the termination of employment was Hubble's conduct associated with a police officer while she was executing a traffic stop in the college parking lot on January 25, 2022.

25.     On July 6, 2022, the Hearing Committee issued its report finding good cause for Hubble's termination.  *See* Exhibit 5 hereto, a true and correct copy of the Hearing Committee's report.  On its face, the report shows that the Hearing Committee considered not only incidents beyond those occurring on January 25, 2022, but also considered exhibits that were not admitted into evidence at the June 29-30, 2022, hearing (MCC's Rebuttal Exhibits 4, 5, 6).  *Id.*

Substantive Due Process

26.     During her testimony at the June 29-30, 2022, faculty appeal hearing, Defendant McKown testified that in her thirty-three years at MCC, 13 of them as President, she could not recall any other professor having suffered tenure revocation in MCC's fifty-seven year history. She recalled professors guilty of operating a gambling ring and indecent exposure whose tenure was not revoked.

27.     Defendant McKown testified that she was aware that very recently, MCC's Title IX Coordinator, Drew Canham, had conducted an extensive investigation of a tenured professor's sexual harassment complaint.  Canham concluded that the accused professor/administrator was guilty; that he had lied about the facts; that witnesses were reluctant to tell what they knew due to "fear of retaliation" by the MCC administration; and reported a "culture of favoritism," creating a toxic atmosphere within Plaintiff's Social and Behavioral Science Division.  Defendant McKown was unconcerned. The offender's punishment was a remedial class and avoiding the female professor he had assaulted and harassed.  No criminal charges were filed.

Procedural Due Process

28.     Documents produced by MCC prior to the Hearing Committee hearing included emails from Defendant McKown requesting other professors (Gilbert Montemayor, Andria Ramon, and Larry Salazar) provide her with complaints about Hubble.  That request resulted in issues dating back to 2006, which according to the Hearing Committee report, were used to justify the recommendation that Hubble's tenure be revoked.  Consideration of those issues contradicted MCC's assurance that the January 25, 2022, encounter with the MCC police officer was the sole ground for revocation of Hubble's tenure.

29.     After reviewing some of the requested documents, Defendant McKown sent an email stating, "I really would like some comments on his not being asked to high schools.  Could Londa provide that?"  Missy Kittner responded saying she had asked Londa for that information.  Andria Ramon submitted a document dated May 9, 2022, stating, "The following is a list of actions by Mr. Casey Hubble which I believe resulted in a hostile work environment."  She listed seven instances dating from 2006 through 2015.  The list included in part, Hubble's complaint of racial discrimination; Hubble questioning her authority as Government Department Chair; and Hubble's complaint of being excluded from Department Meetings.  There is no mention of the January 25, 2022, incident.

30.     Gilbert Montemayor, Hubble's supervisor during the time he was tenured, submitted a three-page document dated May 9, 2022, critical of Hubble.  Montemayor stated that Hubble had not "grown academically," that he fails to "cover the material prescribed by the ACGM Manual"; that he does not like being supervised; that his students commonly say "he is easy," and many other complaints.  There is no mention of the January 25, 2022, incident.

31.     The Hearing Committee report lists as a reason in support of Hubble's revocation of tenure and termination of employment, that Hubble "did not fully maintain competence through

continued professional development nor demonstrate that competence through consistent and adequate preparation and performance and did not seek to enhance that competence by accepting and appropriating constructive criticism." *See* Exhibit 5.

32.     The Hearing Committee report cites MCC's Rebuttal Exhibit 4, which was not admitted into evidence, to support its finding that Hubble failed to fully maintain competence through continued professional development because he failed to follow "the ACGM course standards in Texas Government." *See* Exhibit 5.  The material was from 2008.  The report cites MCC's Rebuttal Exhibits 5 and 6, which were not admitted into evidence, to support its finding that Hubble failed "to fully communicate in his syllabus which caused issues for students."  That material was from 2008.  *Id.*

33.     The Hearing Committee report referred to an incident in 2018 involving Hubble's teaching dual credit classes at the Connally Independent School District referring to MCC's Rebuttal Exhibit 6, which was not admitted.  *See* Exhibit 5.  At no time during the due process proceedings did MCC identify that as a cause or even as a factor in revoking Hubble's tenure.  This undisclosed basis for the Hearing Committee's decision violated Hubble's procedural due process rights.  This fundamental violation of due process blindsided Hubble and deprived him of any opportunity to rebut the allegations outside of the record relied upon by the Hearing Committee.

34.     Hubble repeatedly requested that the two hearings (the May 6, 2022, Advisory Committee hearing and the June 29-30, 2022 Hearing Committee hearing) be delayed until after resolution of the unfounded Class B misdemeanor charge arising from his January 25, 2022, encounter with the MCC police officer.  Hubble explained to MCC that his criminal defense attorney advised him not to testify as to the January 25, 2022, incident so long as the criminal charge was pending.  MCC flatly refused to delay the hearings.  Hubble was unable to defend

himself without giving up his Fifth Amendment rights.  MCC's refusal to delay the hearings deprived Hubble of any opportunity to rebut the allegations as to the January 25, 2022, incident that, according to MCC, was the sole basis of his tenure revocation and termination of employment.

<u>Hubble's Second Termination</u>

35.    Subsequent to the July 6, 2022, Hearing Committee report, Defendant McKown recommended to the MCC Board of Trustees that Hubble's employment be terminated.  The Board of Trustees voted to limit its review to a review of the record before the Hearing Committee, including its report, a transcript of the June 29-30, 2022, hearing, including exhibits, and President McKown's recommendation.  *See* Exhibit 6 hereto, a true and correct copy of the August 2, 2022, letter to Hubble from Mr. K. Paul Holt.  As noted above, the Hearing Committee report relied on MCC Rebuttal Exhibits that were not admitted into evidence.  The Board of Trustees' reliance on that report suffers from the same procedural due process violation as does the Hearing Committee report itself.

36.    On August 2, 2022, Mr. K. Paul Holt, Chair of the MCC Board of Trustees, informed Hubble via letter that the Board of Trustees accepted the recommendation of President McKown and the Hearing Committee that Hubble's tenure be revoked and his employment be terminated.

## CAUSES OF ACTION

### COUNT I

### 42 U.S.C. §1983—FIRST AMENDMENT

### (Freedom of Speech)

37.    Plaintiff incorporates paragraphs 1-36 by reference.

38.    Defendants at all relevant times to this action were acting under color of state law.

39.     Defendants deprived Hubble of his right to freedom of speech in violation of the First Amendment to the Constitution of the United States by revoking his tenure and terminating his employment in retaliation for his exercise of his right to free speech, including his report of wrongdoing to MCC's accreditation agency (SACS), and his encounter on January 25, 2022, with the MCC police officer.

## COUNT II

### 42 U.S.C. §1983- FOURTEENTH AMENDMENT

### (Substantive Due Process)

40.     Plaintiff incorporates paragraphs 1-39 by reference.

41.     Defendants at all relevant times to this action were acting under color of state law.

42.     Defendants deprived Hubble of his property without due process of law in violation of the Fourteenth Amendment to the Constitution of the United States.  Tenure is a recognized property right.  MCC's revocation of Hubble's tenure was arbitrary or capricious and violated Hubble's substantive due process rights. The punishment was grossly disproportionate to the alleged offense and far exceeded other punishments meted out by MCC to employees, including professors, committing far more serious offenses.  He was terminated for reasons of personal animosity and vindictiveness, not his performance as a faculty member.

## COUNT III

### 42 U.S.C. §1983- FOURTEENTH AMENDMENT

### (Procedural Due Process)

43.     Plaintiff incorporates paragraphs 1-42 by reference.

44.     Defendants at all relevant times to this action were acting under color of state law.

45.     Defendants deprived Hubble of his right to procedural due process under the Fourteenth Amendment to the Constitution of the United States by considering and basing the revocation of Hubble's tenure and termination of his employment on grounds other than the January 25, 2022, encounter with the MCC police officer; by condemning him for conduct of which he had no fair notice; by insisting that the due process hearings to which he was entitled occur during the pendency of the unfounded criminal charge depriving Hubble of a meaningful opportunity to defend himself; and by considering exhibits not admitted into the record to reach the decision to revoke Hubble's tenure and terminate his employment.

## ATTORNEYS' FEES

Plaintiff seeks recovery of his reasonable and necessary attorneys' fees under 42 U.S.C. §1988(b).

FOR THESE REASONS, Plaintiff Casey Hubble requests the Court enter judgment in his favor and against Defendants Johnette McKown and McLennan Community College and award Plaintiff compensatory damages, punitive damages, reinstatement, attorneys' fees, pre- and post-judgment interest, and costs of court.

Respectfully submitted,

GRAY & BECKER, P.C.
900 West Avenue
Austin, Texas 78701
Tel: (512) 482-0061
Fax: (512) 482-0924

By: _Douglas M. Becker_
Douglas M. Becker
State Bar No. 02012900
Doug.becker.@graybecker.com
Monte Swearengen
State Bar No. 18871700
monte.swearengen@graybecker.com
***Attorneys for Plaintiff***